**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WENHONG SHANG,

    Plaintiff,

    v.

GEAC ENTERPRISE SOLUTIONS, INC.,

    Defendant.
_____/

No. C 05-1803 PJH

**ORDER DENYING MOTION TO COMPEL ARBITRATION**

Defendant's motion for an order compelling arbitration came on for hearing before this court on September 21, 2005. Plaintiff appeared by her counsel Darryl Parker, and defendant appeared by its counsel Shannon Thorne. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court DENIES the motion as follows and as stated at the hearing.

## INTRODUCTION

This is a dispute arising out of termination of employment. In 1998, plaintiff Wenhong Shang ("Shang") was hired to work as a senior software development engineer by Extensity, Inc. ("Extensity"), located in Emeryville, California. Extensity sent Shang a letter on August 27, 1998, offering her the position.

The offer letter stated that plaintiff's employment was "at will," and enclosed Extensity's "standard Proprietary Information Agreement," which plaintiff was requested to sign. The offer letter also stated:

> In the event of any dispute or claim relating to or arising out of our employment relationship, you and the Company agree that all such disputes shall be fully and

> finally resolved by binding arbitration conducted by the American Arbitration Association in Emeryville, California.
>
> However, we agree that this arbitration provision shall not apply to any disputes or claims relating to or arising out of the misuse or misappropriation of the Company's trade secrets or proprietary information.
>
> . . . This letter, along with the agreement relating to proprietary rights between you and the Company, set forth the terms of your employment with the Company

Shang signed the offer letter on September 2, 1998.

On March 6, 2003, Extensity was acquired by defendant Geac Enterprise Solutions, Inc. ("Geac"). Under the terms of the agreement, Extensity merged with and into Geac, and Geac assumed all the rights, duties, and obligations of Extensity. On August 5, 2003, Sheng signed an "Employee Confidentiality Agreement," which begins, "As Geac Computer Corporation Litmited . . . desires to retain my services as set out in a letter of employment . . . I agree [not to disclose any of Geac's proprietary or confidential information]."

On July 30, 2004, Geac laid off 18 of the 33 employees in its engineering organization in Emeryville, including Shang, who was almost nine months pregnant, and was scheduled to go on maternity leave on August 2, 2004. Shang filed the present action against Geac on May 2, 2005, alleging claims of racial and ethnic discrimination, in violation of the Fair Employment and Housing Act, Cal. Gov't Code § 12940 ("FEHA") and Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq. ("Title VII"); sex and pregnancy discrimination, in violation of FEHA and Title VII; wrongful termination in violation of public policy; and termination of employment to avoid paying ERISA benefits. Geac now seeks an order compelling arbitration.

**DISCUSSION**

A.   Legal Standard

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., any party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3, 4. The FAA eliminates district court discretion and requires the court to compel arbitration of issues covered by the arbitration agreement. Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985). The FAA limits the district court's role to

2

determining whether a valid agreement to arbitrate exists, and whether the agreement encompasses the dispute at issue. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

The FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, state contract defenses may be applied to invalidate arbitration clauses if those defenses apply to contracts generally. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996); see Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (state law defense, such as unconscionability, that applies to contracts generally may also invalidate an arbitration agreement). When determining whether an arbitration agreement is unconscionable, the district court must apply the laws of the state in which the arbitration contract was formed. Circuit City, 279 F.3d at 892.

B.    Geac's Motion to Compel Arbitration

Geac argues that arbitration should be compelled because Shang and Extensity were parties to an enforceable arbitration agreement, and Geac, as the successor entity, has standing to enforce the agreement between Shang and Extensity. Geac also contends that a stay of judicial proceedings pending arbitration of the entire action is appropriate.

Shang opposes the motion, arguing that Geac lacks standing to enforce the arbitration agreement because the original employment agreement (with Extensity) was superceded by a later agreement with Geac. She claims that in August 5, 2003, in exchange for her continued employment following the merger, she and Geac entered into a three-page employment agreement with a one-page addendum, and that this agreement by its terms constituted "the entire agreement between the parties." The agreement to which Shang refers is the "Employee Confidentiality Agreement," which relates to use of Geac's confidential and proprietary information.

The court agrees with Geac that it has standing, as the successor entity, to seek to compel arbitration in this case. The August 5, 2003, confidentiality agreement between Shang and Geac did not supersede the September 2, 1998 arbitration agreement between

3

Shang and Extensity. The August 5, 3003, agreement states that it supersedes "any previous confidentiality agreement or similar undertaking," but says nothing about any previous arbitration agreement.

Shang also argues that the arbitration agreement is both procedurally and substantively unconscionable under California law. She asserts that it is procedurally unconscionable because it was drafted by the stronger party – her former employer – and presented to her as a take-it-or-leave-it condition of employment. With regard to substantive unconscionability, Shang contends that the agreement lacks mutuality because it requires the employee but not the employer to arbitrate claims. She argues that the unconscionability cannot be cured by severing the objectionable provisions because there is no single provision that the court can strike in order to remove the unconscionable taint from the agreement. Shang also claims that striking the offending language would serve no purpose, as Geac would still be free to enter into unilateral unconscionable arbitration agreements that would force employees with discrimination claims into arbitration, and would allow Geac to pursue its own claims in a forum of its choice.

Geac responds that the arbitration agreement does not lack mutuality and is not unconscionable. Geac argues that the agreement between Extensity and Shang is "mutually written" and not one-sided, because it requires both parties to submit claims arising out of their employment relationship to arbitration. Geac contends that even if the court were to find that a provision in the arbitration agreement is unconscionable, that provision can be severed.

Under California law, unconscionability has both a procedural and a substantive component. The former focuses on "oppression" or "surprise" resulting from unequal bargaining power, while the latter focuses on "overly harsh" or "one-sided" results. Generally, a contract that is procedurally unconscionable is one that is a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to accept the contract or reject it. Discover Bank v. Superior Court, 36 Cal. 4th 148, 160 (2005).

Substantive unconscionability takes many forms, but may generally be described as

"unfairly one-sided." Id. One such form is an arbitration agreement's lack of a "modicum of bilaterality" wherein the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration. Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071-72 (2003). The paramount consideration in assessing substantive unconscionability is mutuality. Abramson v. Jupiter Networks, Inc., 115 Cal. App. 4th 638, 664 (2004); see also Armendariz v. Foundation Health Psychcare Servs., Inc., 24 Cal. 4th 83, 120 (2000) (arbitration agreement imposed in adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences). Under the example provided in Armendariz, an arbitration agreement that mandates arbitration of all claims related to termination of employment, but excludes claims relating to theft of trade secrets, would require the employee to arbitrate a claim that he or she was wrongfully terminated for stealing trade secrets, but would not impose an obligation on the employer to arbitrate its claim of theft of trade secrets. Armendariz, 24 Cal. 4th at 120.

The court finds that the employment agreement at issue in this case is both procedurally and substantively unconscionable. The "take-it-or-leave-it" agreement is procedurally unconscionable because is was drafted by the employer and presented to Shang as a condition of employment. In the case of such preemployment arbitration contracts, "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." Id. at 115.

The agreement is substantively unconscionable because it requires binding arbitration of "any dispute relating to or arising out of our employment relationship" while at the same time providing that "this arbitration provision shall not apply to any disputes or claims relating to or arising out of the misuse or misappropriation of the Company's trade secrets or proprietary information." As the California Supreme Court stated in Armendariz,

Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is

> unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to pursue a claim against the employee, without at least some reasonable justification for such one-sidedness based on "business realities." As has been recognized, "unconscionability turns not only on a 'one-sided' result, but also on an absence of 'justification' for it."

Id. at 117-18 (quoting A&M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 487 (1982)). In this case, Geac has provided no business justification for its one-sided arbitration agreement. Indeed, it insists that the agreement is not one-sided, claiming that the language of the agreement "makes clear that it requires both sides to submit their claims to arbitration."

Geac also asserts, however, that in the event the court finds that the agreement is one-sided, the offending provision – the provision excluding from arbitration all disputes relating to trade secrets and proprietary information – can be severed from the agreement, and the arbitration agreement can then be enforced against Shang. Geac maintains that in every case involving an arbitration agreement with a single unconscionable provision, the courts have severed that provision and ordered arbitration to proceed. Geac claims that it is only in cases where there are more than one unacceptable provisions that the courts have refused to sever such provisions. Geac suggests that it would be improper in this case for the court to refuse to sever the provision excluding disputes regarding trade secrets or proprietary information.

As the Supreme Court explained in Armendariz, however, severance is not always appropriate, particularly where substantive unconscionability permeates the entire agreement. See id. at 124. The court also suggested that a court may refuse to enforce an arbitration agreement based on a single unconscionable term, which might otherwise appear severable, if the severance of that provision would not "remove the unconscionable taint from the agreement." Id. at 124-25. In deciding whether to sever an unconscionable term, or to refuse to enforce the agreement as a whole, "the overarching inquiry" for the court is whether "the interests of justice . . . would be furthered by severance." Id.

While it is technically true that there is but a single unconscionable provision in the arbitration agreement at issue in this case, that provision is not severable because the entire

agreement is permeated with unconscionability. The agreement states that "any dispute or claim relating to or arising out of our employment relationship" (emphasis added) will be resolved by binding arbitration, but then carves out an exception – the category of "disputes relating to or arising out of the misuse or misappropriation of the Company's trade secrets." In other words, Geac seeks to impose arbitration on all claims relating to disputes over conditions and terms of employment, but then seeks to exclude some claims (those that it would bring, regarding the misuse or misappropriation of its trade secrets) that fall within the category of "claims relating to . . . [the] employment relationship."

Geac claims that in each instance in which a court, post Armendariz, found a single provision in an arbitration agreement to be unconscionable, the court severed the provision and compelled arbitration. The cases on which Geac relies are distinguishable, however, as they involved either an unconscionable appeal provision, see Little, 29 Cal. 4th at 1074-76; Fittante v. Palm Springs Motors, Inc., 105 Cal. App. 4th 708, 727 (2003); or an unconscionable provision regarding the payment of fees, see McManus v. CIBC World Markets Corp., 109 Cal. App. 4th 76, 101-02 (2003); Irwin v. UBS Painewebber, Inc., 324 F. Supp. 2d 1103, 1110 (C.D. Cal. 2004). Provisions of those types either limit the plaintiff's rights or remedies in the arbitration, or impose burdens in the arbitration that do not exist in a judicial action.

In the present case, however, severing the provision regarding disputes over misappropriation of Geac's trade secrets would have no effect on either Shang or Geac. In particular, Geac would still obtain the result it seeks – arbitration of Shang's claims – whether the unconscionable provision were severed or not. As the Armendariz court noted, an employer will not be deterred from routinely inserting an illegal clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter. Armendariz, 24 Cal. 4th at 124-25 & n.13 (citation and quotation omitted).

More importantly, the lack of mutuality of the exception for disputes relating to trade secrets and proprietary information shows that Extensity/Geac wanted to impose arbitration

on Shang not as an alternative to litigation, but as an inferior forum that works to Shang's disadvantage. Thus, the entire arbitration agreement has been permeated with unconscionability since its inception. Moreover, even after the California Supreme Court issued the Armendariz decision, Extensity did not modify its employment agreements. In addition, after the merger with Extensity, although Geac drafted a new confidentiality agreement – which Shang was required to sign as a condition of continued employment – Geac did not modify the original employee agreement containing the one-sided arbitration provision.[1] The effect of allowing arbitration of Shang's claims against Geac would be to permit Geac to benefit from the unconscionable agreement that was forced on Shang when she accepted employment with Extensity.

## CONCLUSION

In accordance with the foregoing, the court finds that the motion to compel arbitration must be DENIED.

The court will conduct a case management conference on Thursday, October 27, 2005, at 2:30 p.m.

**IT IS SO ORDERED.**

Dated: September 28, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[1] Shang also contends that her statutory claims for pregnancy discrimination and ERISA violations are not subject to arbitration because she did not knowingly waive her right to have such claims adjudicated in a judicial forum. Because the court finds that the arbitration provision is unenforceable, it does not reach the question whether Shang made a knowing waiver of her statutory rights and remedies under FEHA, Title VII, and ERISA.